[No. 39280.    Department One.    May 22, 1969.]

STONEY ANDERSON *et al., Respondents,* v. THURSDAY, INC., *Appellant.**

*Jack W. England* (of *England & Pasco*), for appellant.

*Newton & Newton, Charles R. Denney,* and *R. Michael Kight,* for respondents.

FINLEY, J.—This is an action for breach of a unilateral contract involving alleged failure of appellant to make monthly payments for a certain easement in land previously granted by respondents. In the trial court, respondents obtained summary judgment for monthly installments found due and owing, plus costs and interest. This appeal followed.

Appellant holds several leases of ground in Snohomish County. Appellant has constructed thereon a building and parking lot, which are leased to the Great Atlantic and Pacific Tea Company. A & P's lease is for a period of 10

*Reported in 455 P.2d 932.

years, commencing January 1, 1964, with options to renew. Respondents own property adjacent to the appellants. On this property are a building and parking lot, which are leased to House of Values for a period of 15 years commencing October 1, 1961, with an option to extend for an additional 15 years.

Prior to construction of its building, appellant negotiated reciprocal easements with House of Values, respondents' lessee, for the purpose of establishing a unified parking lot for the convenience of the patrons of appellant's lessee. After obtaining this easement, appellant executed its lease with A & P.

Appellant needed further funds to continue its development. It approached Equitable Life Assurance Society of the United States, seeking mortgage financing for its building, and received a preliminary commitment. However, on closer examination, Equitable was dissatisfied with the arrangements for parking facilities. Equitable insisted, as a condition of financing construction, that appellant obtain from the respondents an easement creating rights of ingress, egress and passage over against respondents' interest in the fee.

Appellant therefore entered into negotiations with respondents for the purpose of obtaining such an easement. The easement was obtained, terminable upon:

(A) The termination of the lease above mentioned wherein Thursday, Inc. is Lessor and Great Atlantic & Pacific Tea Company, Inc. is Lessee, or

(B) When the Equitable Life Assurance Society of U.S., its assigns or successors in interest, no longer is a mortgagor [sic] or has any other interest in and to Parcel A; provided, however, that this easement and agreement shall not terminate and those rights and privileges granted shall not revert to and become reinvested in Grantors in the event that said mortgagor [sic] does foreclose its mortgage and Parcel A is sold at Sheriff's Sale, except as in Paragraph 5 (a) provided.

The agreement also provided that the easement was independent of House of Values' lease from respondents.

It is a further provision of this Agreement that should

the House of Values' lease cease or be terminated that this Agreement as between the parties hereto shall continue in effect to protect the Great Atlantic & Pacific Tea Company, Inc. and Equitable Life Assurance Society of U.S. under their mortgage.

The agreement contained a clause allowing appellant to enter respondents' lands for the purpose of grading, blacktopping and installing drainage for the parking lot. In return for the above easement, appellant promised to pay respondents $150 per month for the duration of the easement.

The necessary regrading and blacktopping were done, and the first 7 months payments were made. Appellant fell into financial difficulties, and has made no payments since that time.

Appellant contended that the agreement was without consideration and that it was executed under business compulsion, since respondents were aware that appellant had been negotiating to put its deal together for 2½ years and at the last moment demanded money in return for the easement insisted upon by Equitable.

Error is assigned to entry of summary judgment upon the ground that there were material issues of fact as to the nature of the consideration and the defense of business compulsion. Error is additionally assigned to the refusal of the trial court to sever the agreement into distinct obligations, to the trial court's conclusion that the agreement was founded upon sufficient consideration and to the disallowance of the business compulsion defense.

The entry of summary judgment for a movant is required if the pleadings, depositions and admissions on file show that there is no genuine issue as to any material fact. CR 56(c). Appellant has argued that there are questions of fact as to the consideration. If that is so, our research shows such fact questions do not appear in the record. Respondent gave an easement co-terminous with the A & P lease or Equitable's interest as mortgagee, an easement which was *independent* of House of Values continuation as respondents' lessee. Respondents also gave

a right to enter their lands to change the grade and to blacktop. There is no claim that these agreements were mere recitals, which were not in fact given. There is no claim that some other promise was in fact made. Thus we conclude there was no material issue of fact as to the consideration.

■ As to the business compulsion issue, appellant's president, Mr. Ruano, was unable to produce any evidence of business compulsion beyond a demand by Anderson for money in return for the grant of the easement. Appellants have cited no authority holding that a lawful demand in response to negotiations initiated by the party asserting compulsion, can constitute business compulsion. *Duke v. Force,* 120 Wash. 599, 208 P. 67, 23 A.L.R. 1354 (1922), and *Olympia Brewing Co. v. State,* 102 Wash. 494, 173 P. 430 (1918), were both concerned with demands unauthorized by law, and are distinguishable on that ground. The allegations of appellant, read in the light of Mr. Ruano's deposition, were insufficient to raise a factual issue as to business compulsion.

Entry of summary judgment was therefore appropriate as to both claimed factual issues. We turn to the legal nature of the agreement. Appellant contends that the contract consisted of three divisible promises: a promise to allow entry to regrade and blacktop, a promise to give an easement for the duration of the A & P lease or Equitable's mortgagee's interest, and a promise to give an easement for an identical duration in the event that the House of Values lease was forfeited or otherwise terminated. Appellant contends that the first promise is ancillary, and was not a detriment to the promisor, that the second promise was a promise which respondents were powerless to perform due to their lease to House of Values and is not legal consideration, and that the third promise, while legal consideration, cannot be enforced as to the payments unless the House of Values lease is terminated.

■ The language of the agreement specifically creates, in terms and form appropriate to a deed, an easement. That easement exists regardless of the House of Values

lease, subject to termination upon specified conditions. Although the instrument was not acknowledged, that defect was not asserted, and would in any event be of no avail between the parties. *Edson v. Knox,* 8 Wash. 642, 36 P. 698 (1894).

■ The respondents did not give three promises. They gave an interest in land. The right to use the land for parking, created out of their fee, existed independent of the House of Values lease, and was an additional legal incumbrance of their fee. That right was also of benefit to the appellant; for, without it, financing from Equitable could not have been obtained. It was quite vigorously bargained for. The promise of the appellant to pay money was founded upon legal consideration.

Appellant's argument that the obligation to pay $150 per month cannot arise until the forfeiture or termination of the House of Values lease produces economic benefit from its easement is a non sequitur. Appellant purchased an interest in land. The terms of payment for that interest were within its power to negotiate. It negotiated for monthly payments for the duration of an interest which commenced immediately. It has shown no legally sufficient reason to be excused from the results of its admittedly poor bargain.

The decision of the trial court is affirmed.

HUNTER, C. J., WEAVER and HAMILTON, JJ., and DONWORTH, J. Pro Tem., concur.